# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### IN ADMIRALTY

CASE NO.

AXA GLOBAL RISKS (UK) LTD.,

      Plaintiff,

vs.

FRANK PIERRE, JR., individually,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, AXA GLOBAL RISKS (UK) LTD., by and through its undersigned counsel and pursuant to 28 U.S.C. §§2201 et seq., hereby sues the Defendant, FRANK PIERRE, JR., for declaratory judgment, as follows:

1.      This is a claim for declaratory relief on a policy of marine insurance that is within this Court's admiralty and maritime jurisdiction arising under 28 U.S.C. §1333. The Complaint herein sets forth an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims.

2.      The Plaintiff AXA GLOBAL RISKS (UK) LTD., is a foreign underwriting entity which at all times material hereto provided security for a policy of marine insurance providing certain hull coverage to the Defendant, FRANK PIERRE, JR., for a 1989 39' Mainship vessel known as "THE FOUR OF US".

CASE NO.
PAGE 2

3.     The Defendant, FRANK PIERRE, JR., is the named assured on the subject policy of marine insurance for the vessel "THE FOUR OF US", and is, upon information and belief, a citizen and resident of the State of Florida residing in Miami Beach, Florida.

4.     On or about July 13, 1999, the Defendant, FRANK PIERRE, JR., submitted a Yacht Application for insurance for the vessel "THE FOUR OF US". (See, Defendant's Yacht Application and Exemplar copy attached as Composite Exhibit A.)  The application requested insurance for the Defendant, FRANK PIERRE, JR., a medical doctor residing at 1640 Daytonia Road, Miami Beach, Florida.     The Defendant stated in his application for insurance that he has had no violations/suspensions (including auto) in the last five years, that he does not employ a paid crew, that he has not been involved in a marine loss in the last ten years and that he has not had his coverage declined, cancelled or non-renewed during the last five years.  (See Yacht Application attached as Exhibit A.)

5.     The application further states, directly above the Defendant's signature, as follows:

**PLEASE READ BEFORE SIGNING**

1.     This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon information contained herein.

2.     **Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.**

Application for Insurance, p.2 Exhibit A.  As indicated, the application is signed and dated by the Defendant.

6.     Based on the Defendant's Yacht Application, the Plaintiff, AXA GLOBAL RISKS

(UK) LTD. issued the Defendant a policy of marine insurance providing certain marine hull and liability insurance coverage for the 39' Mainship powerboat known as the "THE FOUR OF US" (Hull ID#MPC39024A989).  (See, Policy No. 200/533/25177 attached hereto as Exhibit B.)  The policy was issued for a period of one year, expiring July 9, 2000.

7.     On November 13, 1999, the Defendant reported the subject vessel stolen from a location described as 96 Plaza de Lago, Islamorada, Florida sometime between November 7, 1999 and November 13, 1999. (See, Monroe County Offense-Incident Report dated November 13, 1999 attached hereto as Exhibit C.)  As a result of the aforementioned theft, the Defendant, FRANK PIERRE, JR. seeks to recover under the subject policy of marine insurance for the total loss of the vessel.

8.     In response to the Defendant's claim, the Plaintiff underwriters promptly investigated the reported loss.  The investigation revealed the following:

a.     Contrary to the information provided by the Defendant on the Yacht Application (Exhibit A), the subject vessel at all times material hereto was not owned by the Defendant, FRANK PIERRE, JR., but instead was owned by Yola Pierre.  (See, U.S. Coast Guard Certificate of Documentation attached as Exhibit D; Application for Initial Issue, Exchange or Replacement of Certificate of Documentation attached as Exhibit E and reflecting Yola Pierre as sole owner);

b.     Contrary to the information provided by Defendant on the Yacht Application, the vessel was not being stored at the Defendant's residence in Miami Beach, Florida but instead was being stored at all times material at a location in Islamorada, Florida.  (See Monroe County Office-Incident Report attached as Exhibit C.);

c.     Contrary to the information provided by Defendant on the Yacht Application, the Defendant did employ a Captain and crew for the operation of his vessel;

d.      Contrary to Defendant's statement in the Yacht Application that he had no violations (including auto) in the last five years, Plaintiff's investigation revealed that on November 8, 1994, the Defendant received a ticket in Dade County for unlawful speed for which he was found guilty on December 10, 1994.  (See State of Florida Department of Highway Safety and Motor Vehicle printout attached as Exhibit F.);

e.      Contrary to Defendant's representation on the Yacht Application that he was not involved in a marine loss in the last ten years, Plaintiff's investigation revealed that the Defendant had, in fact, been involved in two prior marine losses, including a claim for heavy water damage to the vessel in excess of $30,000 as a result of Hurricane Georges in 1998 (resulting in suit being filed against Defendant's Underwriters), and a May 24, 1999 burglary of the subject vessel while moored behind the Defendant's house.  (See Miami Beach Policy Offense-Incident Report attached as Exhibit G.); and

f.      Contrary to the Defendant's representation on the Yacht Application that he had not had any coverage declined, cancelled or non-renewed during the last five years, Plaintiff's investigation revealed that previous Underwriters had refused to renew Defendant's policy following his lawsuit against them for hurricane damage to the vessel.

9.      At all times material hereto, the subject vessel was never owned by the Defendant and named insured, FRANK PIERRE, JR.  Plaintiff's investigation further revealed that the First Preferred Mortgage on the vessel was entered into between the vessel's sole owner, Yola Pierre and the Mortgagee, Sterling Bank and Trust.  (See, First Preferred Mortgage attached as Exhibit H.) Accordingly, the policy issued to the Defendant, FRANK PIERRE, JR., is void from its inception due to the Defendant's lack of an insurable interest in the vessel.

10.     The Plaintiff's investigation further revealed that the Defendant made numerous material misrepresentations and/or omissions of material fact that render the subject policy of insurance void from its inception.   The Yacht Application expressly states that "any misrepresentation in this application for insurance, will render insurance coverage null and void from inception."

11.     In light of the foregoing, the Plaintiff respectfully submits that the subject policy of marine insurance is rendered void from its inception due to the Defendant's lack of insurable interest in the vessel and due to the Defendant's material misrepresentations and/or omissions of material fact in the Application for Insurance.

12.     The Plaintiff has brought this action pursuant to 28 U.S.C. § 2201 et seq., for purposes of determining a question in actual controversy between the parties regarding coverage under the subject policy of marine insurance.

WHEREFORE, the Plaintiff respectfully requests that Court to adjudge that said policy is deemed void from its inception and that the policy does not provide coverage for the theft of the subject vessel reported in November 1999, where at all times material hereto the Defendant assured did not own the subject vessel and where the Defendant made numerous material misrepresentations and/or omissions of material fact in the Application for Insurance, and that therefore Plaintiff's obligation to the Defendant, by and through the policy of marine insurance and in connection with the referenced loss, did not arise.  On this basis, Plaintiff respectfully requests the Court to enjoin and restrain Defendant from instituting any action against Plaintiff for recovery of the amount of the policy or any part thereof, pending determination of this action and to declare that the obligations of the Plaintiff herein are non-existent or limited in a manner to be proven at the time of trial.

CASE NO.
PAGE 6

Dated this _24th_ day of January, 2000.

Respectfully submitted,

JONATHAN W. SKIPP
Fla. Bar No. 710570

HORR, LINFORS, SKIPP & NOVAK, P.A.
Attorneys for Plaintiff
One Datran Center, Suite 1001
9100 S. Dadeland Boulevard
Miami, Florida 33156
305-670-2525 Telephone
305-670-2526 Telefax



**TLDallas**
*Insurance since 1919*

Insurance Brokers
Lloyds Underwriting Agents
Dallas House, Low Moor
Bradford BD12 0LP

Telephone: 01274 465100
Fax 01274 465100/2

T L Dallas (Special Risks) Ltd

## YACHT APPLICATION

| INSURED'S NAME FRANK PIERRE JR | INSURED'S AGE 55 | DATE 7 | PRODUCER CODE |
|---|---|---|---|

| MAILING ADDRESS 7646 DAYTONIA RD | PRODUCER NAME |
|---|---|
| CITY MIAMI BEACH STATE FL 33141 | PRODUCER ADDRESS |
| PHONE 305-866-5748 | PHONE |
| OCCUPATION MEDICAL DOCTOR | LIENHOLDER INFORMATION STERLING BANK |
| VESSEL NAME THE FOUR OF US | NAME |
| EFFECTIVE DATE FROM 7/13/99 | NUMBER & STREET |

| LAID UP FROM TO | ON SHORE AFLOAT | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

**COVERAGE WILL NOT BE PROVIDED UNLESS REQUESTED HEREIN**

| COVERAGES | SUM INSURED | EQUIPMENT | | PRIMARY POWER | SAIL |
|---|---|---|---|---|---|
| HULL - PHYSICAL DAMAGE | | BILGE PUMPS ✓ | AUX GENERATOR DIESEL ✓ | | OUTBOARD |
| TENDER / DINGHY | | COOKING STOVE ✓ | EPIRB ✓ | | INBOARD |
| LIABILITY COVERAGE | | FLAME DETECTOR ✓ | ENGINE ALARM ✓ | | INBOARD OUTDRIVE |
| CREW LIABILITY | | COMPULSION SYSTEM ✓ | LIFE RAFT ✓ | | OTHER |
| OWNER OPERATOR M&C | | FIRE EXTINGUISHERS ✓ | SONAR ✓ | TYPE OF HULL | SAILBOAT |
| MEDICAL PAYMENTS | | ANTI-THEFT DEVICES ✓ | GPS ✓ | Fiberglass | PERFORMANCE |
| COMMERCIAL PASSENGER LIABILITY | | DEPTH SOUNDER ✓ | OTHER (LIST BELOW) ✓ | | RUNABOUT |
| UNINSURED BOATER | | RADAR ✓ | | HULL MATERIAL | WOOD |
| TRAILER | | LORAN/DIRECTOR FINDER ✓ | | | METAL |
| PERSONAL PROPERTY | | SHIP TO SHORE RADIO ✓ | | | FIBERGLASS |
| NON-EMERGENCY | | LATRINE/MEGA ✓ | | FUEL TANK | METAL |
| OTHER | | AUX GENERATOR GAS | | ALUM | FIBERGLASS |

| VESSEL INFORMATION | YEAR | LENGTH | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE 250,000 | MAX SPEED 20 kn | CRUISE SPEED 9509827 |
|---|---|---|---|---|---|---|---|
| HULL IDENTIFICATION NUMBER | MPC 39024 A989 | | | MAKE BY/UNDERWRITING MAINSHIP |
| TENDER OR DINGHY: | Ø | | STORED AT CITY, CO, ST: RESIDENCE |
| ANTI-THEFT PRECAUTIONS: ALARM | |
| WATERS TO BE NAVIGATED US COASTAL WATERS | |

WILL VESSEL BE LOCATED BETWEEN 12° 6' - 39' NORTH AND 50° - 38' WEST DURING THE PERIOD JULY 1ST - NOV 1ST?     YES/NO

## ENGINE/OUTBOARD MOTOR INFORMATION

| ENG | H.P. | GASOLINE | DIESEL | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|---|---|
| 1 | 300 | | ✓ | 1995 | | 50,000 | |
| 2 | 300 | | ✓ | 1995 | | 50,000 | |
| 3 | | | | | | | |

| | MANUFACTURER/MODEL | | | | SERIAL NUMBER | | |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |

DATE VESSEL LAST SURVEYED     JUNE 29, 1997                    ASHORE / AFLOAT



EXHIBIT
COMPOSITE
A

| TRAILER INFORMATION | | | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|---|
| MANUFACTURER/MODEL: | | | | SERIAL NUMBER: | | |
| DETAILS OF PREVIOUS VESSELS OWNED | | | | | | |

**OPERATORS** (ALWAYS LIST INSURED AS OPERATOR # 1)

| # | NAME | DATE OF BIRTH | AUTO DRIVERS LICENSE # | STATE | SOCIAL SECURITY # | USCG/POWER SQUADRON CERTIFICATE |
|---|---|---|---|---|---|---|
| 1 | FRANK PIERRE JR | 1L12UL | P60020 444170 | FL | N5942U1B4 | |
| 2 | | | | | | |
| 3 | | | | | | |
| | VIOLATIONS/SUSPENSIONS (INCLUDING AUTO) IN LAST 5 YEARS | | | | YEARS OF BOAT OWNERSHIP | |
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |

**GENERAL INFORMATION**

| 1 | EXPLAIN ALL "YES" RESPONSES IN REMARKS | YES | NO | 4 | EXPLAIN ALL "YES" RESPONSES IN REMARKS | YES | NO |
|---|---|---|---|---|---|---|---|
| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? | | ✓ | 5 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? | | ✓ |
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? | | ✓ | 6 | DOES THE APPLICANT EMPLOY A PAID CREW? IF SO HOW MANY? | | ✓ |
| 3 | IS THE BOAT USED FOR RACING? | | ✓ | 7 | WAS ANY OPERATOR INVOLVED IN A MARINE LOSS IN THE LAST 10 YEARS (INSURED OR NOT)? | | ✓ |
| 4 | IS THE BOAT USED FOR WATER SKIING OR DIVING? | | ✓ | 8 | HAS ANY COVERAGE BEEN DECLINED, CANCELLED OR NON-RENEWED DURING THE LAST 5 YEARS? | | ✓ |
| | IF THE BOAT IS USED FOR FARE PAYING PASSENGER CHARTERS, WHAT IS THE AVERAGE NUMBER OF PASSENGERS PER TRIP | | | NUMBER OF TRIPS PER YEAR | | | |

**REMARKS**

**PLEASE READ BEFORE SIGNING APPLICATION**

1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained herein.
2. Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.
3. A photograph of the vessel is required to be submitted with this application.

**NOTICE:**

The normal procedure used by the company to evaluate applications may include obtaining an investigation consumer and credit report involving information on such things as charter, general reputation, personal characteristics and mode of living. Information on the nature and scope of such a report, if one is made, will be given to you upon request.

| APPLICANT SIGNATURE: | SIGNATURE DATE: 7/13/99 |
|---|---|

TOTAL P.05

Insurance Brokers
Marine Underwriting Agents
Dallas House, Low Moor
Bradford BD12 0HF

Telephone: 01274 465500
Fax: 01274 465502/3

# TLDallas
*Insurance since 1919*

T L Dallas (Special Risks) Ltd

## YACHT APPLICATION

| INSUREDS NAME | | INSUREDS AGE | DATE | | PRODUCER CODE | |
|---|---|---|---|---|---|---|
| MAILING ADDRESS | | | | PRODUCER NAME | | |
| CITY | COUNTY | STATE | ZIP | PRODUCER ADDRESS | | |
| PHONE | HOME | BUSINESS | | PHONE | | |
| OCCUPATION | | | | **LIENHOLDER INFORMATION** | | |
| **VESSEL NAME** | | | | NAME | | |
| **EFFECTIVE DATE** FROM          TO | | | | NUMBER & STREET | | |
| **LAID UP** FROM          TO | | | ON SHORE AFLOAT | CITY | STATE | ZIP CODE |

## COVERAGE WILL NOT BE PROVIDED UNLESS REQUESTED HEREON

| COVERAGES | SUM INSURED | EQUIPMENT | | | PRIMARY POWER | SAIL |
|---|---|---|---|---|---|---|
| HULL - PHYSICAL DAMAGE | | BILGE PUMPS | | AUX GENERATOR DIESEL | | OUTBOARD |
| TENDER / DINGHY | | COOKING STOVE | | EPIRB | | INBOARD |
| LIABILITY COVERAGE | | FLAME DETECTOR | | ENGINE ALARM | | INBOARD/OUTDRIVE |
| CREW LIABILITY | | CO2/HALON SYSTEM | | LIFE RAFT | | OTHER |
| OWNER OPERATOR M&C | | FIRE EXTINGUISHERS | | SONAR | TYPE OF HULL | SAILBOAT |
| MEDICAL PAYMENTS | | ANTI-THEFT DEVICES | | GPS | | PERFORMANCE |
| COMMERCIAL PASSENGER LIABILITY | | DEPTH SOUNDER | | OTHER (LIST BELOW) | | RUNABOUT |
| UNINSURED BOATER | | RADAR | | | HULL MATERIAL | WOOD |
| TRAILER | | LORAN/DIRECTION FINDER | | | | METAL |
| PERSONAL PROPERTY | | SHIP TO SHORE RADIO | | | | FIBREGLASS |
| NON-EMERGENCY | | SATNAV/OMEGA | | | FUEL TANK | METAL |
| OTHER | | AUX GENERATOR GAS | | | | FIBREGLASS |

| VESSEL INFORMATION | YEAR | LENGTH | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE | MAX SPEED | REGISTRATION NUMBER |
|---|---|---|---|---|---|---|---|
| HULL IDENTIFICATION NUMBER: | | | | MANUFACTURER/MODEL: | | | |
| TENDERS OR DINGHIES: | | | | STORED AT (CITY, DO, BT): | | | |
| ANTI-THEFT PRECAUTIONS: | | | | | | | |
| WATERS TO BE NAVIGATED: | | | | | | | |
| WILL VESSEL BE LOCATED BETWEEN 12°40' - 25° NORTH AND 55° - 85° WEST DURING THE PERIOD JULY 1ST - NOV 1ST | | | | | | | YES/NO |

## ENGINE/OUTBOARD MOTOR INFORMATION

| ENG | H.P. | GASOLINE | DIESEL | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |

| | MANUFACTURER/MODEL | | | | SERIAL NUMBER | | |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |

| DATE VESSEL LAST SURVEYED | ASHORE / AFLOAT |
|---|---|

| TRAILER INFORMATION | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|
| MANUFACTURER/MODEL: | | SERIAL NUMBER: | | |

DETAILS OF PREVIOUS VESSELS OWNED:

## OPERATORS (ALWAYS LIST INSURED AS OPERATOR # 3)

| # | NAME | DATE OF BIRTH | AUTO DRIVERS LICENCE # | STATE | SOCIAL SECURITY # | USCG/POWER SQUADRON CERTIFICATE |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |

| # | VIOLATIONS/SUSPENSIONS (INCLUDING AUTO) IN LAST 5 YEARS | YEARS OF BOAT OWNERSHIP |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |

## GENERAL INFORMATION

| # | EXPLAIN ALL "YES" RESPONSES IN REMARKS | YES | NO | # | EXPLAIN ALL "YES" RESPONSES IN REMARKS | YES | NO |
|---|---|---|---|---|---|---|---|
| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? | | | 6 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? | | |
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? | | | 7 | DOES THE APPLICANT EMPLOY A PAID CREW IF SO HOW MANY? | | |
| 3 | IS THE BOAT USED FOR RACING? | | | 8 | WAS ANY OPERATOR INVOLVED IN A MARINE LOSS IN THE LAST 10 YEARS (INSURED OR NOT?) | | |
| 4 | IS THE BOAT USED FOR WATER SKIING OR DIVING? | | | 9 | WAS ANY COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE LAST 5 YEARS? | | |
| 5 | IF THE BOAT IS USED FOR FARE PAYING PASSENGER CHARTERS, WHAT IS THE AVERAGE NUMBER OF PASSENGERS PER TRIP        NUMBER OF TRIPS PER YEAR | | | | | | |

## REMARKS

**PLEASE READ BEFORE SIGNING APPLICATION**

1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained herein.
2. **Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.**
3. A photograph of the vessel is required to be submitted with this application.

**NOTICE:**

The normal procedure used by the company to evaluate applications may include obtaining an investigation consumer and credit report involving information on such things as charter, general reputation, personal characteristics and mode of living. Information on the nature and scope of such a report, if one is made, will be given to you upon request.

| APPLICANT SIGNATURE: | SIGNATURE DATE: |
|---|---|



**TLDallas**
*Insurance since 1919*

Insurance Brokers
Marine Underwriting Agents
Credit Insurance Specialists
Independent Financial Advisors

# COVER NOTE

### Policy No: 200/533/ 25177

T L Dallas (Special Risks) Ltd
Dallas House  Low Moor
Bradford BD12 0HF

Telephone +44 (0)1274 465563
Fax +44 (0)1274 465502/3

In accordance with your instructions we have effected the following cover on your behalf subject to the terms and conditions in the policy wording and endorsements attached.

| Assured : | Producer : |
|---|---|
| Frank Pierre Jr MD<br>1660 Daytona Road<br>Miami Beach | Insco Marine Inc<br>2031-8 Forest Avenue<br>Staten Island |
| FL 33141 | NY 10303 |

| | | | |
|---|---|---|---|
| **Vessel Name:** | The Four Of Us | **Model:** | Cruiser |
| **Year:** | 1989 | **Maker:** | Mainship |
| **ID Number:** | MPC39024A989 | **Length:** | 39' |
| **Engines:** | Diesel | **Type:** | Twin 300hp |

**Period of Cover:** With effect from   July 09, 1999 00.01 LST   o   July 09, 2000 00.01 LST

### Cover and Respective Insured Limits:

| Section: | Sum Insured: | Deductible: |
|---|---|---|
| A) Hull | 250,000 | 5,000 |
|   Tender | Not Covered | |
|   Towing | Not Covered | |
| B) P + I | 300,000 | 500 |
|   Crew Liability | Not Covered | |
|   Commercial Passenger Liability | Not Covered | |
|   Owner Operator | Not Covered | |
| C) Medical Payments | 5,000 | 100 |
| D) Uninsured Boaters | 25,000 | 500 |
| E) Trailer | Not Covered | |
| F) Personal Property | 5,000 | 500 |

**Total Premium :   US$ 2310.00 C.R.O. + US$25 Policy Fee.**

In the event of cancellation by the Assured minimum of 25% of premium deemed earned.
All fees earned at inception.



**EXHIBIT**

**B**

Member of the British Insurance
and Investment Brokers' Association

Registered number 952756

## Continuation Cover Note for Policy No: 200/533/25177

**Laid Up Period :**    None

**Navigational Limits :**    East Coast United States, Florida & Bahamas – not to exceed 100 miles offshore.

**Conditions :**    as per TLD/3/PPO/AXA

**Warranties:**    Warranted Private and Pleasure use only.

Named Windstorm Deductible Clause.

Warranted current out of water survey and all survey requirements complied with.

**Endorsements :**    None

**Special Warranties or Conditions :**    Warranted no known or reported losses as at 13th July 1999

**Security as approved and agreed by you:**

100% AXA Global Risks (UK) Ltd
per Cover Numbered 200/533

---

**Loss Payee :  Assured**

---

Date :  Thursday, July 22, 1999

................................................................................

For and on behalf of Participating Underwriters

ORIGINAL IN POST.

## POLICY ENDORSEMENT

**Endorsement Number :**     1

Attaching to and forming part of policy number : 200/533/25177

| Assured : | Producer: |
|---|---|
| Frank Pierre Jr MD<br>1640 Daytona Road<br>Miami Beach<br><br>FL 33141 | Insco Marine Inc<br>2031-B Forest Avenue<br>Staten Island<br><br>NY 10303 |

**It is hereby noted and agreed that with effect from : July 09, 1999**

The following Loss Payee is added to this policy

Sterling Bank & Trust, FSB
One Towne Square, 17th Floor
Southfield
MI 48076

Further, assured's address is amended as above.

**All other terms and conditions remain unaltered.**

Date:   October 22, 1999

....................................................................
Signed in England for and on behalf of
Participating Underwriters.

# PRIVATE AND PLEASURE YACHT INSURING AGREEMENT WORDING

## 1. DEFINITIONS

a)  "You and your" refer to the insured named on the declaration page.

b)  "We, us and our" refer to the insurers named on the declaration page or accompanying schedule of insurers.

c)  "Covered person," means you, or any person detailed on your application form which has been submitted and approved by us. This does not include either a paid captain and/or crew, or a person or organisation, or their employee or agent, operating a marina, boatyard, yacht club, charter operation, sales agency, refuelling dock or similar organisations.

d)  "Scheduled vessel" means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, furniture, dinghy, outboard motor and all other equipment normally required for the operation and maintenance of the vessel and which would normally be sold with the vessel.

e)  "Trailer" refers to the insured vessel's trailer, used exclusively for that purpose.

f)  Words of masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g)  "Navigational limits" means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h)  "Salvage charges" means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life and with our permission to prevent or minimise any further loss or damage covered by Section "A" of your insuring agreement.

i)  "Deductible" A deductible is the first amount of any claim, which must be paid by you. If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount shall be deducted from the amount payable on each admissible claim.

j)  "Bodily injury/property damage" means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the vessel.

k)  "Seaworthy" means fit for the Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For a vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l)  "Sinking" means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged under water.

m)  'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

n)  'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding 'scheduled vessel' as defined in (d) above.

TLD/3/PPO/AXA                                                                                Page 1 of 12

o) 'Race or speed trial' means any event involving speed and or of a competitive nature, including, but not limited to, Regattas and or Rallies. "Preparing for a race or speed trial," means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

p) "Named Windstorm" damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the "named windstorm" or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the "named windstorm" or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for section "A" of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or damage to scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us whether successful or not. These will be paid in addition to the sum insured under section "A" and "F" without application of the insuring agreement deductible, but a coinsurance provision applies whereby we pay 80% and you pay 20% of such expenses. Our maximum liability for these expenses is 80% of the sum insured under section "A" of this insuring agreement.

We will pay salvage charges incurred by you occasioned by a peril covered by this insuring agreement, up to the limit of the sum insured under section "A" of this insuring agreement.

If the insured vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured. If your liability has been contested, and consent has been given by us in writing, we will also pay the costs thereby incurred and paid. If both vessels are to blame then, unless the liability of the owners of one or both vessels becomes limited by law, claims under this section shall be settled on the principles of cross liabilities, as if the owners of each vessel had been compelled to pay the owners of the other vessel(s) such as one half or other proportion of the latter's damages as may have been properly allowed in ascertaining the amount payable by or to you in consequence of such a collision. This principle shall apply in cases where both vessels are owned in part or in whole by you and all questions of responsibility and amount of liability between two vessels shall be left to a single Arbitrator, or if we are unable to agree upon a single Arbitrator then one shall be appointed by you and one shall be appointed by us. The two Arbitrators chosen may then choose a third Arbitrator and the decision of such single, or any two of such three Arbitrators appointed as above shall be final and binding.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the insured vessel or for loss of life or personal injury.

TLD/3/PPO/AXA

Whilst the scheduled vessel is afloat theft coverage shall exclude theft or mysterious disappearance of its equipment or personal property unless occurring in conjunction with theft of the entire scheduled vessel or unless there is visible evidence of forcible entry and/or removal; made by tools, explosives, electricity or chemicals.

Whilst the scheduled vessel is on land, coverage is restricted to theft of the entire scheduled vessel including its equipment from a locked garage or locked storage building, or from such other storage place and subject to such other storage conditions, as we have prior approved in writing.

While the scheduled vessel is stored on a trailer coverage is restricted to theft of the entire scheduled vessel including its equipment from a locked garage or locked storage building or a locked fenced enclosure. If secured to a vehicle it must be secured with a trailer ball lock. It is understood and agreed that this insuring agreement does not cover loss or damage caused by the theft of your vessel and/or equipment while stored on a trailer unless occasioned by person or persons making forced entry into the locked fenced enclosure, garage or building and by destruction of the ball lock. Theft must be accompanied by actual force and violence of which there shall be visible marks made by tools, explosives, electricity or chemicals.

In any event a deductible of 10 % of the agreed hull value of the scheduled vessel and/or equipment is to apply to each theft loss, including total loss of the scheduled vessel. However a deductible of 5 % of the agreed hull value of the scheduled vessel shall apply to each theft loss including total loss where the scheduled vessel is stored and or moored in a recognised commercial storage yard or marina.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the scheduled vessel and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement. theft losses as referred to above and from a named windstorm as described below.

Loss or damage to the scheduled vessel arising from a Named windstorm shall be subject to a deductible which shall apply to all claims, including Actual and/or Constructive and/or Compromised Total Loss of the insured vessel. equal to double the Hull and Machinery deductible as shown on the declaration page.

## Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses are not covered by this insuring agreement:

a)    Damage sustained by scheduled vessel whilst being transported over land, more than 100 miles from the normal place of storage.

b)    Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould animal and marine life.

c)    Marring, scratching or denting.

d)    Osmosis, blistering or electrolysis.

e)    Manufacturing defects or design defects, including latent defects.

f)    Unrepaired damage claims if the scheduled vessel is subsequently an actual or constructive total loss, due to an insured peril, during the insuring agreement period.

g)    Losses caused directly or indirectly by ice or freezing.

**TLD/3/PPO/AXA**                                              Page 3 of 12

h)  Theft of the dinghy or tender and/or its outboard motor unless stolen together with the insured scheduled vessel from a storage place approved by us for theft coverage, or unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

i)  Loss and or damage to the dingy and or tender whilst being towed behind the scheduled vessel.

j)  Damage to the scheduled vessel caused by theft, and/or attempted theft unless coverage would have been provided under the theft provisions and restrictions detailed in Section A.

k)  Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs. car rental, communication costs.

l)  Losses caused by delay and or loss of use and or enjoyment of the scheduled vessel and or its equipment.

## 4. Coverage B.  Third Party Liability

If a sum insured is shown under section "B" of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of scheduled vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice.  Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

### Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid. Liability cover is not provided for:

a)  Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b)  Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c)  Liability assumed by you under any contract or agreement.

d)  Liability which arises while the scheduled vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e)  Fines or penalties imposed by any Government agency.

f)  Punitive damages.

g)  Liability due to pollution by any substance whether it be gradual, or sudden and accidental.

h)  Intentional acts.

i)  Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute.

**TLD/3/PPO/AXA**                                                          **Page 4 of 12**

j)     Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)     Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the scheduled vessel, until they are safely back on board. This exclusion however shall not extend to non competitive water skiing for which limited coverage is provided below

l)     Liability to snorklers and divers operating from the scheduled vessel, from the time they commence to leave your vessel, until they are safely back on board.

m)     Liability to fare paying passengers or passengers carried under charter.

n)     Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)     Loss or damage to any other vessel caused by the vessel insured in so far as the same would have been covered under section "A" of this insuring agreement.

p)     Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the suns rays either cumulatively or suddenly.

q)     Any claim arising from directly or indirectly caused by or associated with Human T-Cell Lymphotropic Virus type III (HILV II) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

### Coverage B, Water Skiing Coverage Limitation of Liability

Whilst the Insured vessel is being used for water skiing, the third party liability limits are reduced to :

| | |
|---|---|
| Property damage | US $10,000 |
| Bodily Injury | US $10,000 |
| Maximum any one incident | US $20,000 |

These limits shall apply from the time any person or persons begin to leave the scheduled vessel, or such activity commences, and will continue until the person or persons are safely back on board or such activity ceases completely. Nothing herein contained shall be held to vary waive or extend any of the exclusions conditions or other terms of this insuring agreement.

### Coverage B, Extension to include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover maintenance and cure and/or Jones Act Liability for hired crew. We reserve the exclusive right to set the terms, conditions and sum insured in respect of such coverage, or to decline your request.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement schedule and shall form part of the maximum recoverable under Section "B", Third Party Liability.

### 5. Coverage C, Medical Payments

If a sum insured is shown under section "C" of the insuring agreement declaration page, we will pay reasonable medical and funeral expenses necessary due to accidental bodily injury of third parties, incurred whilst boarding, leaving or onboard the scheduled vessel insured under this insuring

agreement. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under section "B" of this insuring agreement, arising from the same occurrence.

This coverage will be excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved. Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

## Exclusions to Coverage C

We do not provide medical payment coverage for:

a)    Covered persons, their spouses, family or other persons who reside with them. Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b)    Responsibility assumed under any contract or agreement.

c)    Anyone injured whilst the scheduled vessel is being transported, hauled out or launched.

d)    Trespassers on the scheduled vessel.

e)    Anyone to or for whom benefits are payable under any Workers Compensation or under "Federal Longshoreman's and Harbour Workers Compensation Act".

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under section "D" of the insuring agreement declaration sheet, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

## Exclusions to Coverage D

We do not provide coverage for:

a)    Claims settled without our prior written consent.

b)    Loss due to an uninsured vessel which is a Government vessel.

c)    Loss due to a vessel operated by a covered person.

d)    Loss where no physical damage to the scheduled vessel exists, evidencing collision.

TLD/3/PPO/AXA                                        Page 6 of 12

## 7. Coverage E, Trailer

If a sum insured is shown under section "E" of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer if it is used exclusively for the transportation of the scheduled vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value. Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us, whether successful or not. These will be paid in addition to the sum insured under section "E" without application of the insuring agreement deductible, but a coinsurance provision applies whereby we pay 80% and you pay 20% of such expenses.

Theft of the trailer is covered if the trailer is stolen from a marina, locked garage or locked storage building, or from such other storage place and subject to such storage conditions as we have prior approved in writing.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual or constructive total loss of the scheduled vessel plus trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement.

### Exclusions to Coverage E

a) Damages sustained by scheduled vessel whilst being transported over land, more than 100 miles from the normal place of storage.

b) Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould animal or marine life.

c) Marring, scratching or denting.

d) Manufacturing defects or design defects, including latent defects.

e) Tyre damage.

e) Losses due to exceeding manufacturers maximum load or speed specifications.

f) Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

## 8. Coverage F, Personal Property

If a sum insured is shown under section "F" of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloading from the scheduled vessel. Theft losses shall only be recoverable in accordance with the conditions detailed under Section "A". Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is $1,000.

Fishing gear and tackle, unless permanently affixed to the scheduled vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible.

TLD/3/PPO/AXA                                                                 **Page 7 of 12**

We will not cover loss or damage to:

a)  Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b)  Fishing gear or tackle which is permanently affixed to the scheduled vessel, unless the scheduled vessel insured hereunder shall become an actual or constructive total loss, due to a peril insured against.

We will not cover losses due to:

a)  Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b)  Breakage of articles of a brittle nature unless caused by the scheduled vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c)  Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the scheduled vessel.

## 9. General Conditions & Warranties

a)  It is warranted that the scheduled vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity.

b)  It is warranted that the scheduled vessel is seaworthy at the inception of the insuring agreement. Violation of this warranty will void this insuring agreement from its inception.

c)  This insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence properly to manage the scheduled vessel or maintain it in a seaworthy condition.

d)  This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

e)  This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the scheduled vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the scheduled vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

f)  This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated as pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied. Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

g)  If you sell or pledge the scheduled vessel or otherwise transfer ownership in part or in full, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

h)  In the event of a claim under this insuring agreement for an actual or constructive total loss, the annual premium is deemed fully earned.

TLD/3/PPO/AXA

i)  It is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

j)  We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

k)  It is warranted that covered persons must at all times comply with relevant Statutes, Laws, by-laws and US Coast Guard and other regulations, governing the use of the scheduled vessel.

l)  If the scheduled vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year and recharging as necessary.

m)  If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

n)  This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

o)  We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these. iv) Capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

p)  If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us.

q)  If any covered person has other insurance against property damage loss covered by this insuring agreement, we will only pay the proportion of the claim which our sum insured bears to the total of all the sums insured covering the loss. If this insuring agreement provides liability coverage, this insurance shall be excess over all other valid and collectible liability insurances.

r)  Unless we specifically agree in writing, and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

s)  Unless we agree in writing to the contrary, if we request a survey of the scheduled vessel then such survey must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the scheduled vessel, then it is an express warranty of this agreement that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either:

   1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

   Or.

   2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

TLD/3/PPO/AXA                                                   Page 9 of 12

t)      In no event shall this insurance cover any loss, damage, expense or liability of whatever nature, which might otherwise be recoverable under this insuring agreement arising out of or in any way connected with, whether directly or indirectly, the use or operation of any computer, computer system, computer software, programme or process or any electronic system where any such loss, damage, expense or liability arises directly or indirectly, as a consequence of a) the date change to the year 2000 or any other date change and/or b) any change or modification of or to any such computer, computer system, computer software, programme or process or any electronic system in relation to any such date change.

u)      The scheduled vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible .Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows:

A)   Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum
B)   Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum
C)   Sails, standing and running rigging - 12.5% per annum
D)   Internal and/or external protective covers, canvas, vinyl and other materials - 20% per annum
E)   Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum
F)   Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum
G)   Outboard Motors - 20% per annum
H)   Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers - 20% per annum
I)   Batteries and solar charging panels - 20% per annum
J)   Electrical equipment including but not limited to internal and external appliances, winches, pump motors and electric deck gear - 10% per annum.
K)   Mast and spars – 5% per annum.
L)   Stanchions and lifelines - 10% per annum.
M)   Inflatable, tenders or dinghies – 12.5 % per annum.
N)   Hard FRP, composites, aluminium or wood tenders or dinghies – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciation value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

We have the right to settle any physical loss or damage claim under this insuring agreement. either by making payment to you of the estimated loss agreed between you and us, or by making repairs or replacements, like with like, for your lost or damaged property.

v)      No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be

sustainable unless commenced within the shortest limitations permitted under the laws of such state.

w)    Where a lay up "laid up period" has been specified within the declaration page, it is warranted that the scheduled vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified. "Use" includes, but is not restricted to, living on board the scheduled vessel.

## 10. Your Duties In The Event Of A Loss

1)    Immediately take all possible steps to minimise the loss and protect the scheduled vessel from further loss. Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2)    As soon as possible give us notification of the loss and its circumstances.

3)    Comply with any reasonable request made of you, by us with regard to the loss.

4)    Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5)    Give us an opportunity to examine the damaged property before it is repaired or discarded.

6)    Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7)    Neither assume obligation, nor admit liability without our written permission to do so.

8)    Immediately forward to us any legal papers or notices received in connection with the loss.

9)    Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request

10)    Allow examination by physicians of our choice.

11)    Assist us in obtaining copies of medical records and reports.

12)    Give us a notarised statement or statutory declaration if we so request.

13)    Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14)    Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service Of Suit Clause

It is agreed that in the event of the failure of the Underwriters severally subscribed to this insurance (The Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriter's right to remove an action to the United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

TLD/3/PPO/AXA                                                    

Subject to the Underwriters rights set forth above:

a)    It is further agreed that the Assured may serve process upon any senior partner in the firm of:

> LeBoeuf, Lamb, Greene & MacRae LLP
> 125 West 55th Street
> New York
> NY 10019-5389

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)    The above named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriters behalf in the event such a suit shall be instituted.

c)    The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgage under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgage.

d)    Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

Clause 11 above is subject, in all respects to clause 12 hereafter.

## 12. CHOICE OF LAW

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

# OFFENSE-INCIDENT REPORT

| Connecting Incidents/Rel. Case No. | Agency ORI Number | Agency Name | Agency Report Number | Juvenile In Report | 1 Original | X Supplement | Page |
|---|---|---|---|---|---|---|---|

**Agency ORI Number:** F L 0 4 4 0 0 0 0  
**Agency Name:** OFFICE OF SHERIFF, MONROE COUNTY, FLORIDA  
**Agency Report Number:** 9 9 3 1 6 9 6 2  
**Page:** 10

**Original Day Reported:** SAT  **Date:** 11 13 99  **Time (mil):** 1352  **Time Dispatched (mil):** 11/4/7  **Time Arrived (mil):** 11/4/4  **Time Completed (mil):** 15/2

**Incident Type:** 1 Felony / 3 Misdemeanor / 5 Other  
**Incident Day:** From SUN  **Time (mil):** 11/07/99  1100  **Day:** To SAT  **Date:** 11/13/99  **Time (mil):** 1200

**OFFANC #1  Type:** GRAND THEFT (Vessel)  **Status Violation Number:** C 8 1 2 - 0 1 4  **A Attempted / C Committed:** C  **NCIC/UCR Code:**

**#2**

**Incident Location (Street, Apt. Number):** 116 W. Plaza de Lago, Islamorada  **City:** Islamorada  **Zip:** 33036  **District:** 3 3 6 0 0  **Grid:** 01  **Shift:** 01  **Zone:** 2

**Business Name/Area Identifier:** FORD BN-1610A  **Forced Entry:** O Yes N No  **N**  **Occupancy:** 1 Occupied / 2 Unoccupied / 3 Abandoned  **2**

**Location Types:**
01 Residence Single
02 Apartment/Condo
03 Residence Other
04 Hotel/Motel
05 Convenience Store
06 Gas Station
07 Liquor Sales
08 Bar/Nightclub
09 Supermarket
10 Dept/Discount Store
11 Specialty Store
12 Drug Store/Hospital
13 Bank/Financial Inst.
14 Commercial/Office Bldg
15 Industrial/Mfg
16 Storage
17 Gov't/Public Bldg
18 School/University
19 Jail/Prison
20 Religious Bldg
21 Airport
22 Bus/Rail Terminal
23 Construction Site
24 Other Structure
25 Parking Lot/Garage
26 Highway/Roadway
27 Park/Woodland/Field
28 Lake Waterway
29 Motor Vehicle
30 Other Mobile
98 Unknown
99 Other

**99**

| OFFANC | # Victims | # Offenders | # Prem. Ent. | # Veh. Stolen | Type Weapon | Knife/Cutting Instrument | | Fire/Incendiary | Drugs |
|---|---|---|---|---|---|---|---|---|---|
| 01 | 01 | Unk | 00 | 00 | | | | | |

01 Handgun  02 Rifle  03 Shotgun  04 Firearm  05 Blunt Object  06 Knife/Cutting Instrument  07 Personal Weapon  08 Poison  09 Explosives  10 Fire/Incendiary  11 Threat/Intimidation  12 Simulated Weapon  13 Drugs  98 Unknown  99 Other  **100**

**CODES**

**Activity:** P Possess / S Sell / B Buy / T Traffic / S Smuggle / D Deliver / E Use / K Dispense/Distribute / M Manufacture/Produce/Cultivate / U Unknown / Z Other

**Type:** A Amphetamine / B Barbiturate / C Cocaine / H Heroin / H Hallucinogen / M Marijuana / O Opium/Derivative / P PCP / E Equipment / S Synthetic / U Unknown / Z Other

**Unit:** 1 Gram / 2 Milligram / 3 Kilogram / 4 Ounce / 5 Pound / 6 Ton / 7 Liter / 8 Milliliter / 9 Dose Unit/Item

| | Activity | Type | Description | | | Quantity | Unit | Estimated Street Value | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | $ | 00 |
| | | | | | | | | $ | 00 |
| | | | | | | | | $ | 00 |

**CODES**

**V/W Code:** V Victim / W Witness / C Reporting Person / P Proprietor / X Other

**Victim Type:** 1 N/A / 2 Law Officer / 3 Adult / 4 Business / 5 Government / 6 Church / 9 Other

**Race:** N N/A / W White / B Black / I American Indian / O Oriental/Asian / U Unknown

**Sex:** N N/A / M Male / F Female / U Unknown

**Residence Type:** N N/A / C City / 3 Florida / 4 Out-of-State

**Residence:** O N/A / K Full Year / P Part Year / N Non-Resident

**Extent of Injury:** N None / M Minor / S Serious / F Fatal

**Injury Type:** 01 Laceration / 02 Unconscious / 03 Poss Broken Bones / 04 Poss. Internal Injury / 07 Loss of Teeth / 08 Burns / 09 Abrasions/Bruises / 99 Other

**Victim Relationship To Offender:** A Parent / B Spouse / C Child / D Brother/Sister / E In-Law / F Common Law / G Boy/Girl Friend / H Friend / J Employee / K Landlord/Tenant / L Stranger / M Undetermined / N Ex-Spouse / O Step-Parent / P Step-Child / Q Other Family / R Student / S Teacher / T Child/Boy-Girl Friend / U Neighbor / V Sitter/Day Care Worker / W Employer / X Acquaintance / Y Other Unknown / Z N/A

**OFFANC Indicator:** 1 Both  **2 #2**  **V/W Code:** V  **V. Type:** 3  **Name (Last, First, Middle or Business):** PIERRE, FRANK  **Residence Phone:** 305-664-0539

**Address (Street, Apt No.):** 116 W. Plaza de Lago  **City:** Islamorada  **State:** FL  **Zip:** 33036  **Business Phone:** 305-664-9948

**Other Contact Info (Time Available, Interpreter, etc.):** 16940 Daytona Ct. Miami Bch 33141  **Synopsis of Involvement:** Victim

**If V/W Code:** V  **Race:** B  **Sex:** M  **Date of Birth or Age:** 1 7 4 4 3  **Res. Status:** 3  **Res. Type:** 3  **Extent of Injury:** 0 0  **Injury Type(s):** Y  **Relationship:** Y  **Will victim prefer charges?** Yes ☑ No ☐

**V, W, C, or P:**

**OFFANC Indicator:** 1 Both  **2 #2**  **V/W Code:**  **V. Type:**  **Name (Last, First, Middle or Business):**  **Residence Phone:** ( )

**Address (Street, Apt. No.):**  **City:**  **State:**  **Zip:**  **Business Phone:** ( )

**Other Contact Info (Time Available, Interpreter, etc.):**  **Synopsis of Involvement:**

**If V/W Code:**  **Race:**  **Sex:**  **Date of Birth or Age:**  **Res. Type:**  **Res. Status:**  **Extent of Injury:**  **Injury Type(s):**  **Relationship:**  **Will victim prefer charges?** Yes ☐ No ☐

**V, W, C, or P:**

**OFFANC Indicator:** 1 Both  **2 #2**  **Suspect Code:** S Suspect / A Arrested / F Escapee / Z Other  **Code:**  **Juvenile:**  **Name (Last, First, Middle):**  **Nickname/AKA:**  **Number Arrested:**  **In-Book #:**

**Last Known Address (Street, Apt. Number):**  **City:**  **State:**  **Zip:**  **Residence Phone:**

**SUSPECT**

| Race | Sex | Date of Birth or Age | Height | Weight | Eye Color | Hair Color | Hair Length | Hair Style | Texture |
|---|---|---|---|---|---|---|---|---|---|

| Complexion | Facial Hair | Teeth | Speech/Voice | Clothing | Appearance | Physical Cond | Scars/Marks/Tattoos (Location/Describe) | Hand Use |
|---|---|---|---|---|---|---|---|---|
| | Glasses | | | | | | | ☐ Left  ☐ Right  ☐ Unknown |

**OFFANC Indicator:** 1 Both  **2 #2**  **Suspect Code:** S Suspect / A Arrested / F Escapee / R Recovered / M Missing  **R Recovered / Z Other:**  **Code:**  **Juvenile:**  **Name (Last, First, Middle):**

**SUSPECT OR MISSING PERSON**

EXHIBIT C

**Last Known Address (Street, Apt. Number):**  **City:**  **State:**  **Zip:**

| Race | Sex | Date of Birth or Age | Height | Weight | Eye Color | Hair Color | Hair Length | Hair Style | |
|---|---|---|---|---|---|---|---|---|---|

| Complexion | Facial Hair | Teeth | Speech/Voice | Clothing | Appearance | Physical Cond | Scars/Marks/Tattoos (Location/Describe) | |
|---|---|---|---|---|---|---|---|---|
| | Glasses | | | | | | | |

| COMPLEXION | BUILD | FACIAL HAIR | TEETH | SPEECH | TATTOO | CLOTHING | | HAIR LENGTH | HAIR STYLE |
|---|---|---|---|---|---|---|---|---|---|
| ALB - Albino | A Heavy/Fat | A Clean Shaven | B Broken/Chipped | A Accent | K Tattaho | C Baseball Cap | N Dress | A Bald | Afro/Natural |
| BLK - Black | B Medium | B Unshaven | A Missing | R Lisp | K Quiet | G Watch Cap | O Sweater | B Collar | B Braided |
| DRK - Dk Brown | C Thin | C Heavy Brows | C None | C Slurred | L Said Nothing/Mentioned | C Crest Hat | R Jacket | C Long | C Bushy |
| DRK - Dark | D Muscular | D Sideburns | D False/Dentures | D Stuttered | M Profane | O Cowboy Hat | P Overalls | D Receding | D Crew Cut |
| FAR - Fair | X Other (specify in narrative) | E Frizzy | E Braces | E Nasal | N Broken | C Other Hat | S Suit | E Shoulder | E Greasy |
| FRR - Lt Brown | Y Not Applicable | F Goatee | F Missing | F Hoarse | O Calm | D Headband/Scarf | T Bathing Suit | F Short | F Military |
| LGT - Light | Z Unknown | G Gu Manchu | G Recent | G Normal | P Normal | Q Ski Mask | U Uniform | X Other (specify in narrative) | G Pony Tail |
| MRN - Med Brown | | L Long Upper Lip Hair | H Prominent | H Shocking Meek | X Other (specify in narrative) | V Shocking Meek | V Boot/Shoes/ | Y Not Applicable | H Processed |
| MED - Medium | GLASSES | I Goatee | I Stained/Decayed | I Slow | Y Not Applicable | W Earrings/Jewelry | X Other (specify in narrative) | Z Unknown | J Straight |
| OLV - Olive | A No Glasses | J Thin Beard | J Gold | J Pleasant | Z Unknown | X Other (specify in narrative) | Y Not Applicable | | K Wig |
| RUD - Ruddy | B Plastic Frames | K Full Beard | K Silver | | | Y Not Applicable | Z Unknown | | L Dyed |
| SAL - Sallow | C Wire Frames | L Other (specify in narrative) | X Other (specify in narrative) | HAIR TEXTURE | F Wiry | Z Unknown | | PHYSICAL | X Wavy/Curly |
| YEL - Yellow | D Rimless | X Other (specify in narrative) | Y Not Applicable | A Coarse | G Kinky | | | CONDITION | M Other (specify in narrative) |
| | E Sunglasses | Y Not Applicable | Z Unknown | B Fine | X Other (specify in narrative) | APPEARANCE | O Unusual Odor | A Handicapped | Y Not Applicable |
| | F Contact Lenses | Z Unknown | | C Shaved | Y Not Applicable | A Conservative | W Well Groomed | B Intoxicated | Z Unknown |
| | X Other (specify in narrative) | | | D Thick | Z Unknown | B Dirty | I Work Clothes | C High/On Drugs | |
| | Y Not Applicable | | | E Thinning | | C Disguise | X Other (specify in narrative) | X Other (specify in narrative) | |
| | Z Unknown | | | | | D Flashy | Y Not Applicable | Y Not Applicable | |
| | | | | | | E Neat | Z Unknown | Z Unknown | |
| | | | | | | F Unkept | | | |

OPS 001-6/88

| Agency ORI Number | Agency Name | Agency Report Number | | |
|---|---|---|---|---|
| FID 4 4 1 0 0 0 0 | OFFICE OF SHERIFF, MONROE COUNTY, FLORIDA | 7 9 3 1 6 9 6 2 | 1 Report 2 Supplement | |

**MISSING PERSON SUMMARY**

Incident Type:
1 Runaway  8 Disaster
2 Parental  Victim
3 Involuntary  7 Voluntary
4 Disabled  Adult
5 Endangered  8 Unknown

Foul Play Suspected? Y - Yes N - No

Missing Before? Y - Yes N - No U - Unknown

Fingerprint Available? Y - Yes N - No U - Unknown

Photo Available? Y - Yes N - No U - Unknown

Dental Record Available Y - Yes N - No U - Unknown

NCIC Form Provided? Y - Yes N - No

Date Last Seen / Time Last Seen / Location Last Seen (Address, City, St) / Accompanied By

Mental/Physical Condition / Medication Required/Type / Doctor/Dentist (Name, Phone Number)

Property Carried / ID Type/Number / ID Type/Number

Probable Destination / Name/Address / Transportation Mode

Recovery Information: 1 N/A  2 Located  3 Hospitalized  5 Law Enforcement Custody  7 Deceased  9 Other

**CODES**

Person Code: V Victim, E Escapee, S Suspect, D Recovered, M Missing, A Arrestee, O Other

Status Code: 1 Stolen, 2 Recovered, 3 Stolen and Recovered, 4 Suspicious, 5 Impounded, 6 Abandoned, 7 Fast Return, 8 Damaged, 9 Other

Damage Code: 0 N/A, 1 Arson, 2 Criminal Mischief, 3 During Other Offense, 4 Stopped/Theft From, 5 Other

Type: 1 Auto, 2 Truck/Van, 3 Motorcycle, 4 Camper/RV, 5 Bus, 6 Trailer, 7 Boat, 8 Aircraft, 9 Other

Recovery Location: 1 Family Residence, 2 Apt Complex, 3 Shopping Project, 4 Commercial Industrial, 5 Park/Playground, 6 Shopping Mall, 7 Woods, 8 Water, 9 Other

Recovery Code: Stolen / Recovered 1 Local / Local, 2 Local / Other, 3 Other / Local

**VEHICLE/VESSEL**

| Person Code # | Veh # | Status | Damage | Type | Year | Make | Model | Style |
|---|---|---|---|---|---|---|---|---|
| V I | | | O | 7 | 89 | | | |

Tag Reg/Dec # / Reg State / Reg Year / Decal Number / Tag Type

| VIN/Hull AA | Estimated Value |
|---|---|
| M P C 3 9 0 2 4 A 9 8 9 | 1 0 0 0 0 0 0 ∞ |

Condition: 1 Window Closed  2 Locked  3 Keys in Ignition
Insurance Company: TL DALLAS
Lien Holder: STERLING BANK

Color (Top/Bottom): WHITE / BLK   Description (Identifying Characteristics, Noticeable Damage, Interior Color, etc.) NAME "THE FLUR OF US" (Reg # FL 6382 GT)

| Vessel Name | Length | Hull Material | Propulsion | Boat Type |
|---|---|---|---|---|
| MAINSHIP | 39' | FIBERGLASS | INBOARD DIESEL | CABIN CRUISER |

Recovery Address/Geographic Indicator / Data Recovered / Value Recovered $ ∞

Recovery Inc / Recovery Code / Original Reporting Agency / Report Number / Hold Y-Yes N-No / Reason/Authority

**THEFT**

Method of Theft: 0 N/A  2 Tow Truck  4 Steering  5 Ignition Punch  6 Major Body Parts  10 Other Specify
1 Keys  3 Hot Wire  8 Unknown  1 VIN Plate  3 Radio/CB  5 Interior  7 Engine Parts  9 Tab/Decal Stolen

Components Stripped: 0 N/A  2 Tires/Wheels  4 Battery  6 Transmission

Towed By / Storage Location / FCIC/NCIC / Location of Original Theft / Vehicle Acquisition

Type of Theft: 00 N/A  02 Robbery  04 Pocket Picking  06 Embezzlement  08 From Public  10 From Vehicle  11 By Computer  99 Other  9 9
01 Burglary  03 Shoplifting  05 Purse Snatching  07 From Coin Oper. Machine  Access Bldg  10 Extortion  12 Fraud

**OFFENSES**

Person Code: V-Victim, S-Suspect, P-Proprietor, A-Arrestee, O-Other
Status Code: 1 Stolen, 2 Recovered
3 Stolen and Recovered 4 Recovered for Other Jurisdiction  5 Lost  6 Found  7 Safekeeping  8 Evidence/Seized  9 Arson
Damage Code: 0 N/A  1 Arson  2 Criminal Mischief  3 During other Offense  9 Other

Property Type:
A Auto Accessory/Parts  F Food/Liquor/Consumable  K Clothing/Fur  P Art/Collection  U Currency/Negotiable  Z Miscellaneous
B Bicycle  G Gun  L Livestock  Q Computer Equipment  V Credit Card/Non Negotiable
C Camera/Photo Equipment  H Household Appliance/Goods  M Musical Instrument  R Radio/Stereo  W Boat Motor
D Drug  I Plant/Crops  N Construction Machinery  S Sports Equipment  X Structure
E Equipment  J Jewelry/Precious Metal  O Office Equipment  T TV/Video/VCR  Y Farm Equipment

**PROPERTY**

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|
| | | | | O | 01 | Boat | MAINSHIP | FIBERGLASS |

Serial Number: MPC 39024A989  Owner Applied Number: FL 6382 GT  Description (Size, Color, Caliber, Barrel Length, etc.) WHITE w/ BLK Bottom  Property Receipt #

Value $ 1 0 0 0 0 0 0 / Value Recovered $ / Date Recovered / FCIC/NCIC

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|
| V I | 8 | 01 | 1 | Picture | color | | | |

Serial Number: / Owner Applied Number: / Description (Size, Color, Caliber, Barrel Length, etc.) Picture of vessel that was stolen / Property Receipt # 67282

Value $ / Value Recovered $ / Date Recovered 1 1 3 9 9 / FCIC/NCIC

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Serial Number: / Owner Applied Number: / Description (Size, Color, Caliber, Barrel Length, etc.) / Property Receipt #

Value $ / Value Recovered $ / Date Recovered / FCIC/NCIC

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Serial Number: / Owner Applied Number: / Description (Size, Color, Caliber, Barrel Length, etc.) / Property Receipt #

Value $ / Value Recovered $ / Date Recovered / FCIC/NCIC

| Person Code # | Item # | Status | Damage | Property Type | Quantity | Name | Brand | Model Name/Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Serial Number: / Owner Applied Number: / Description (Size, Color, Caliber, Barrel Length, etc.) / Property Receipt #

Value $ / Value Recovered $ / Date Recovered / FCIC/NCIC

**DOCUMENT**

| Vic # | Wit # | Susp # | Doc # | Status | Type | Rank/Card Issuer | Account Number | Document/Serial No |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Printed Name / Payable To / Face Signature

Endorsement / Other Name(s) / Service/Property Received

ID Type / ID Number / Document Date / Amount

**NARRATIVE CONTINUATION**

| | | 1. Offense | 2. Arrest | 1. Juvenile | 2. | 1. Original | 2. Supplement | Page 3 | of | Page 3 |

Agency ORI Number: FL0 4 4 0 0 0

Agency Name: OFFICE OF SHERIFF, MONROE COUNTY, FLORIDA

Agency Report Number: 9 9 3 7 6 9 6 2

Case Reference

Original Date Reported: 1 1 1 3 9 9

On the above listed Date And time I responded to the above listed location in Report of the theft of a Vessel. Upon arrival I made contact with above listed Victim Who related to Me that between the indicated Dates and times, Unknown person or (Persons) Removed his 34 foot Mainship Cabin Cruiser type Vessel from his Dock Behind the indicated Address. Victim Stated that Vessel had All types of Electronics installed on it. IE: Radar, Depth Recorders, Marine Radios (VHF), Stereo, T.V., VCR, Microwave, etc. Victim Also Stated that it had Yanmar Diesel Engines along with a Generator. Vessel is white with Black Bottom.

Vessel: 39' Mainship Cabin Cruiser

Description: White Fiberglass Hull with Black Bottom. Aluminum Tuna Tower with Black Canvas Top on Tower. Dual Station Controls

Power: Twin Inboard Diesel Yanmar 300 Hp Engines. Along with Yanmar Generator.

Location where Taken: From Dock Behind Residence. Vessel was Docked and tied with Numerous Ropes and Dock Fenders. One Dock Fender was lost and Several Dock lines were taken along with vessel. Vessel was Also connected to Shore Power, Cable Also taken. Vessel was in Canal on Corner of Ponce De Leon and W Plaza De Lago

Evidence: No Evidence was visible at this time. However the outlet which the Shore Power Cable was connected to was pulled out of the wall and left unsecured.

Area Canvas: An Area Canvas was conducted of the following. # 48-52-60 W Plaza De Lago to which revealed No Further information. However on W Plaza Grenada, Several residence were Attempted to be located but No One was Home at the time.

Conclusion: FMP was Notified by Victim Prior to My Arrival and (Cast Guard) was Notified by our Dispatch and also entered in FCIC & NCIC. A Picture of Vessel was Also Placed into Evidence.

Units on Scene: Dep N Sanchez

---

Report Contains | Related Report Number(s)

Officer(s) Reporting: Dep N Sanchez   8147   Dep N Sanchez   ID Number(s): 8147/335   Unit: 03   Date: 11/13/99

Officer Reviewing (If Applicable): Sgt L Bogan   46C   ID Number   Routed To   Returned To: Cass   Assigned To: 7693   By: 7Ab   Date

Case Status   Clearance Type: 1 Arrest, 2 Exceptional, 3 Unfounded | A Adult, J Juvenile | Date Cleared | Arrest Number | Number Arrested

Exception Type: 1 Extradition Declined, 2 Arrest on Primary Offense Secondary Offense Without Prosecution, 3 Death of Offender, 4 V/W Refused, 5 Prosecution Declined, 6 Juvenile / No Custody   OBTS Number

OPS-004-2/99

# PROPERTY RECEIPT
## OFFICE OF THE SHERIFF, MONROE COUNTY

FOR PROPERTY DIVISION USE ONLY

CASE NUMBER **67283**

993/0.762

| | | |
|---|---|---|
| [ ] FOUND / RECOVERED | DISPOSITION | |
| | [ ] HOLD - SUBJECT UNKNOWN | [ ] CONFISCATE / DESTROY |
| [ ] LAB EVIDENCE | [ ] HOLD - CHARGES FILED | [ ] RETURN TO OWNER / FINDER |
| [ ] TRIAL EVIDENCE | PRIMARY CHARGE  *Grand theft* | [ ] FELONY  [ ] MISDEMEANOR |

DATE IMPOUNDED  *11-13-99*

TIME IMPOUNDED  *11/14*

ADDRESS WHERE PROPERTY IMPOUNDED (Give exact location)  *Islamorada Pub. Hndgun*

DISCOVERED BY (Name)  *Dep N Sanchez*   ADDRESS  *88770 o/s Hwy*   CITY  *Tavernier*   STATE  *FL 33070*   TELEPHONE NUMBER  *(305) -53-3211*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NAME | | ADDRESS | | CITY | | STATE | TELEPHONE NUMBER |
| OWNER [ ]  VICTIM [ ] | ARRESTED [ ]  SUSPECT [ ] | OBTS # | | RACE | SEX | DOB | WARRANT  YES [ ]  NO [ ] |
| NAME | | ADDRESS | | CITY | | STATE | TELEPHONE NUMBER |
| OWNER [ ]  VICTIM [ ] | ARRESTED [ ]  SUSPECT [ ] | OBTS # | | RACE | SEX | DOB | WARRANT  YES [ ]  NO [ ] |

| BAR CODE | ITEM # | QTY | DESCRIPTION |
|---|---|---|---|
| | 1 | 1 | *1) Luke Brand- linea / color / Equipment interest of* |
| | | | *Vessel that was stolen* |
| | | | *No other property* |

COMMENTS:

## LABORATORY ANALYSIS REQUEST

[ ] CHEMISTRY [ ] LATENTS [ ] DOCUMENTS [ ] SEMEN AND / OR STAINS [ ] TRACE EVIDENCE [ ] PHOTOGRAPHIC
[ ] DRUGS [ ] FIREARMS [ ] TOOLMARKS [ ] BLOOD AND / OR STAINS [ ] BIOLOGY - SEROLOGY [ ] OTHER

Special Analysis requested (if any, specify); Additional Evidence will follow (specify): _____

I hereby acknowledge that the above list represents all property taken from my possession and that I have received a copy of this receipt.

I hereby acknowledge that the above list represents all property impounded by me in the official performance of my duty as a Deputy Sheriff.

Impounding Officer (X)  *Dep. McBain Dep. N. Sanchez*

Signature (X)

Division / Agency  *MCSO*   I.D. #  *8147/335*

| Received By | Reason | Date / Time Received |
|---|---|---|
| Received By | Reason | Date / Time Received |
| Received By | Reason | Date / Time Received |
| Received By | Reason | Date / Time Received |
| | Reason | Date / Time Received |

Copy #1 - Evidence/Property File   Copy #2 - Chain of Custody   Copy #3 - Records   Copy 4 – Station Property File   Copy #5 - Property Received/Custody Receipt

DEPT. OF TRANSP., USCG, CG 1270 (Rev. 9-92)



OMB APPROVED
2115-0110

# UNITED STATES OF AMERICA
## DEPARTMENT OF TRANSPORTATION
## UNITED STATES COAST GUARD

HIN: NPC59024A989

# Certificate of Documentation

| VESSEL NAME | OFFICIAL NUMBER | HAILING PORT |
|---|---|---|
| THE FOUR OF US | 959827 | MIAMI BEACH FL |

| GROSS | NET | LENGTH | BREADTH | DEPTH | HULL MATERIAL | SELF PROPELLED |
|---|---|---|---|---|---|---|
| 23 | 19 | 39.1 | 14.0 | 6.5 | FRP | YES |

| PLACE BUILT | YEAR BUILT |
|---|---|
| MARLBORO, NEW JERSEY | 1989 |

| OWNER | OPERATIONAL ENDORSEMENTS |
|---|---|
| YOLA PIERRE | RECREATION |

COMPLETE RECORDS ON FILE AT:   MIAMI, FL

**NATIONAL VESSEL DOCUMENTATION CENTER**
**U. S. COAST GUARD**

| MANAGING OWNER | |
|---|---|
| YOLA PIERRE<br>1640 DAYTONIA ROAD<br>MIAMI BEACH, FL 33141 | **I HEREBY CERTIFY THIS TO BE A TRUE COPY**<br>**OF THE RECORDS OF THIS OFFICE.**<br><br>*Teresa Hines* 11-24-9<br>DOCUMENTATION OFFICER          DATE<br><br>*as of 7:00 A.m* |

RESTRICTIONS

NONE

ENTITLEMENTS

NONE

REMARKS

NONE

THIS CERTIFICATE MAY NOT BE ALTERED EXCEPT BY AFFIXING OFFICIAL RENEWAL AND ADDRESS CHANGE DECALS ON THE R

| ISSUED AT   MIAMI, FL | SIGNATURE AND SEAL |
|---|---|
| ISSUE DATE   JULY 28, 1995<br>THIS CERTIFICATE EXPIRES ON THE LAST DAY OF ___JUL 96___<br>UNLESS RENEWED BY DECAL ON REVERSE.  DGM | DOROTHY G. MONTAGUE<br>DOCUMENTATION OFFICER |

**EXHIBIT**
**D**

PREVIOUS EDITION OBSOLETE

SN 7530-01-GF2-od70

| DEPARTMENT OF TRANSPORTATION U.S. COAST GUARD CG-1258 (REV. 9-92) | APPLICATION FOR INITIAL ISSUE, EXCHANGE, OR REPLACEMENT OF CERTIFICATE OF DOCUMENTATION; REDOCUMENTATION | THIS SECTION FOR COAST GUARD USE ONLY |
|---|---|---|

CASE NUMBER: 9500 8824

CHECK #: 9231

FEE: $ 108.00 - cb

IPN: 9502186

NOTE. THIS IS AN APPLICATION ONLY AND DOES NOT OF ITSELF ENTITLE A VESSEL TO DOCUMENTATION NOR TO ANY CHANGES SOUGHT ON A CERTIFICATE OF DOCUMENTATION. OFFICIAL NUMBERS DESIGNATED ON THE BASIS OF THIS APPLICATION ARE NOT TRANSFERRABLE. A COPY OF THIS APPLICATION IS NOT VALID FOR VESSEL OPERATION.

**I. COMPLETE FOR ALL APPLICATIONS**

PORT OF RECORD

APPROVED: *Dorothy B. Metzger*

DATE: 7-27-95

PORT: M. in US

| A. VESSEL NAME | B. OFFICIAL NUMBER (IF AWARDED) OR HULL IDENTIFICATION NUMBER |
|---|---|
| THE FOUR OF US | 959827 |

| C. NAME OF MANAGING OWNER | D. ADDRESS OF MANAGING OWNER |
|---|---|
| YOLA PIERRE | 1640 Daytonia Rd. Miami Beach, Fla. 33141 |

TELEPHONE NUMBER (OPTIONAL):

SOCIAL SECURITY OR TAX ID NUMBER

| E. NAMES AND SOCIAL SECURITY OR TAX ID NUMBERS OF ALL OTHER OWNERS | F. HAILING PORT (TO BE MARKED ON VESSEL) |
|---|---|
| n/a | MIAMI BEACH, FLA. |

ATTACH SHEET LISTING ADDITIONAL OWNERS IF NECESSARY

**G. CITIZENSHIP** (SEE INSTRUCTIONS REGARDING STATUS OF ALIENS LAWFULLY ADMITTED FOR PERMANENT RESIDENCE)

XXXX VESSEL OWNED BY ONE OR MORE INDIVIDUALS   I (WE) CERTIFY THAT ALL OWNERS OF THIS VESSEL ARE CITIZENS OF THE UNITED STATES.

— VESSEL OWNED BY JOINT VENTURE OR ASSOCIATION   I (WE) CERTIFY THAT ALL MEMBERS OF THIS JOINT VENTURE (ASSOCIATION) ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT THE VESSELS COVERED BY THIS APPLICATION WITH THE ENDORSEMENT(S) SOUGHT IN THEIR OWN RIGHT.

— VESSEL OWNED IN A TRUST ARRANGEMENT   I (WE) CERTIFY THAT ALL TRUSTEES AND ALL BENEFICIARIES WITH AN ENFORCEABLE INTEREST IN THIS TRUST ARRANGEMENT ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT VESSELS WITH THE ENDORSEMENT(S) SOUGHT IN THEIR OWN RIGHT.

— VESSEL OWNED BY A PARTNERSHIP
A. GENERAL PARTNERSHIP   I (WE) CERTIFY THAT ALL PARTNERS IN THIS PARTNERSHIP ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT, AND THAT THE PARTNERSHIP MEETS THE FOLLOWING EQUITY REQUIREMENT: EQUITY OWNED BY CITIZENS OF THE U.S.
☐ AT LEAST 60%   ☐ MORE THAN 60%, LESS THAN 75%   ☐ 75% OR MORE

B. LIMITED PARTNERSHIP   I (WE) CERTIFY THAT ALL GENERAL PARTNERS IN THIS PARTNERSHIP ARE CITIZENS OF THE UNITED STATES, ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT, AND THAT THE PARTNERSHIP MEETS THE FOLLOWING EQUITY REQUIREMENTS: EQUITY INTEREST OWNED BY CITIZENS OF THE U.S. ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT WITH THE ENDORSEMENT SOUGHT.
☐ AT LEAST 60%   ☐ MORE THAN 60%, LESS THAN 75%   ☐ 75% OR MORE

☐ VESSEL OWNED BY A CORPORATION   D. NUMBER OF DIRECTORS NECESSARY TO CONSTITUTE A QUORUM

A. STATE OF INCORPORATION ___   E. NUMBER OF ALIEN DIRECTORS

B. CITIZENSHIP OF PRESIDENT (AND OTHER CHIEF EXECUTIVE OFFICER, IF ANY) ___   F. PERCENTAGE OF STOCK OWNED BY U.S. CITIZENS ELIGIBLE TO DOCUMENT VESSELS IN THEIR OWN RIGHT, WITH THE ENDORSEMENT(S) SOUGHT ON THIS APPLICATION (APPLIES TO ALL TIERS OF OWNERSHIP).

C. CITIZENSHIP OF CHAIRMAN OF THE BOARD ___   ☐ LESS THAN 50%   ☐ AT LEAST 50%   ☐ MORE THAN 50%, LESS THAN 75%   ☐ 75% OR MORE

☐ VESSEL OWNED BY A CORPORATION QUALIFIED AND APPLYING UNDER 46 CFR 68.01 (BOWATER)   CURRENT CERTIFICATE OF COMPLIANCE ATTACHED. I (WE) CERTIFY THAT THE CORPORATE STRUCTURE HAS NOT CHANGED SINCE ISSUANCE OF THAT CERTIFICATE, AND THAT THE VESSEL, IF SELF-PROPELLED, IS LESS THAN 500 GROSS TONS.

☐ VESSEL OWNED OR OPERATED BY NOT-FOR-PROFIT OIL RECOVERY COOPERATIVE   COPY OF CURRENT LETTER OF QUALIFICATION ATTACHED. I (WE) CERTIFY THAT THE INFORMATION ON FILE WITH REGARD TO COOPERATIVE AND ISSUANCE OF THAT LETTER REMAINS UNCHANGED.

**H. ENDORSEMENTS FOR WHICH APPLICATION IS MADE** (IF MORE THAN ONE, INDICATE ESTIMATED PERCENTAGE FOR EACH)

| | | | |
|---|---|---|---|
| ☒ RECREATIONAL | ☐ COASTWISE | ☐ FISHERY | ☐ COASTWISE (BOWATER ON |
| ☐ REGISTRY | ☐ GREAT LAKES TRADE | | ☐ OIL SPILL RESPONSE |

PREVIOUS EDITION OBSOLETE   SN 7530-00-F01

**EXHIBIT E**

## I. PURPOSE OF APPLICATION:

- [XX] 1. EXCHANGE OF CERTIFICATE OF DOCUMENTATION.
- [ ] 2. REPLACEMENT OF LOST, WRONGFULLY WITHHELD OR MUTILATED CERTIFICATE OF DOCUMENTATION
- [ ] 3. RETURN TO DOCUMENTATION FOLLOWING DELETION. NAME OF VESSEL WHEN LAST DOCUMENTED:
- [ ] 4. APPLICATION FOR OFFICIAL NUMBER AND FIRST CERTIFICATE OF DOCUMENTATION. VESSEL

[ ] WAS BUILT AT _____ IN _____

OR

[ ] IS UNDER CONSTRUCTION AT _____ AND IS SCHEDULED FOR COMPLETION IN _____

HULL MATERIAL: [ ] WOOD   [ ] STEEL   [ ] FIBROUS REINFORCED PLASTIC   [ ] ALUMINUM   [ ] CONCRETE

[ ] OTHER (DESCRIBE) _____

APPROXIMATE LENGTH OF VESSEL _____

PREVIOUS NAMES, NUMBERS, OR FOREIGN REGISTRATIONS OF VESSEL _____

## J. CERTIFICATION:

I (WE) CERTIFY THAT:

(A) I AM (WE ARE) A CITIZEN(S) OF THE UNITED STATES AND LEGALLY AUTHORIZED TO EXECUTE THIS APPLICATION IN THE CAPACITY SHOWN;

(B) THAT THE VESSEL(S) TO WHICH THIS APPLICATION APPLIES:

(i) [XX] HAS (HAVE) BEEN MARKED
OR
[ ] WILL BE MARKED

IN ACCORDANCE WITH THE DIRECTIONS IN THE INSTRUCTION SHEET (CG-1258-A) FOR THIS APPLICATION;

(ii) WILL AT ALL TIMES REMAIN UNDER THE COMMAND OF A U.S. CITIZEN;

(iii) WILL NOT BE OPERATED IN A TRADE NOT AUTHORIZED BY THE ENDORSEMENT(S) ON THE CERTIFICATE(S) OF DOCUMENTATION;

(iv) HAS NOT BEEN REBUILT SINCE LAST DOCUMENTATION

(v) THE VESSEL IS

[XX] NOT TITLED UNDER A STATE
OR
[ ] IS TITLED UNDER THE LAWS OF _____

(C) THE NAME(S) OF THE VESSEL(S) WILL NOT BE CHANGED WITHOUT APPROVAL OF A COAST GUARD DOCUMENTATION OFFICER; AND

(D) I (WE) WILL PROMPTLY NOTIFY THE DOCUMENTATION OFFICER AT THE VESSEL'S PORT OF RECORD OR THE PORT NEAREST THE VESSEL UPON A CHANGE IN ANY OF THE INFORMATION OR REPRESENTATIONS IN THIS APPLICATION.

| PRINTED OR TYPED NAME | SIGNATURE | CAPACITY (E.G., OWNER, AGENT, TRUSTEE, GENERAL PARTNER, CORPORATE OFFICER) |
|---|---|---|
| YOLA PIERRE | *Yola pierre* | SOLE OWNER |

DATE: 1-26-95

## PRIVACY ACT STATEMENT

IN ACCORDANCE WITH 5 U.S.C. 552a, THE FOLLOWING INFORMATION IS PROVIDED TO YOU WHEN SUPPLYING PERSONAL INFORMATION TO THE U.S. COAST GUARD.

1. AUTHORITY. SOLICITATION OF THIS INFORMATION IS AUTHORIZED BY 46 U.S.C., CHAPTERS 121 AND 125; 46 U.S.C. APP. 802 AND 883.

2. THE PRINCIPAL PURPOSES FOR WHICH THIS INFORMATION IS TO BE USED ARE:

(1) TO DETERMINE CITIZENSHIP OF THE OWNER OF THE VESSEL FOR WHICH APPLICATION FOR DOCUMENTATION IS MADE; AND
(2) TO DETERMINE ELIGIBILITY OF THE VESSEL TO BE DOCUMENTED WITH THE TRADE ENDORSEMENT SOUGHT.

3. THE ROUTINE USES WHICH MAY BE MADE OF THIS INFORMATION INCLUDE RELEASE TO LAW ENFORCEMENT OFFICIALS, TO THE GENERAL PUBLIC UNDER FREEDOM OF INFORMATION ACT, AND TO PUBLISH INFORMATION ABOUT U.S. DOCUMENTED VESSELS.

4. DISCLOSURE OF THE INFORMATION REQUESTED ON THIS FORM IS VOLUNTARY. HOWEVER FAILURE TO PROVIDE THE INFORMATION REQUESTED WILL RESULT IN DENIAL OF THE APPLICATION FOR DOCUMENTATION, WHICH MAY PREVENT THE OWNER FROM OPERATING THE VESSEL(S) IN A SPECIFIED TRADE.

THE COAST GUARD ESTIMATES THAT THE AVERAGE BURDEN FOR THIS FORM IS 30 MINUTES. YOU MAY SUBMIT ANY COMMENTS CONCERNING THE ACCURACY OF THIS BURDEN ESTIMATE OR MAKE SUGGESTIONS FOR REDUCING THE BURDEN TO: COMMANDANT (G-MVI), U.S. COAST GUARD, WASHINGTON, DC 20593-0001 OR OFFICE OF MANAGEMENT AND BUDGET, OFFICE OF INFORMATION AND REGULATORY AFFAIRS, ATTENTION: DESK OFFICER FOR DOT/USCG, OLD EXECUTIVE OFFICE BUILDING, WASHINGTON, DC 20503.

*U.S. Government Printing Office: 1992 — 317-473/47944

```
==================================================================================
FRANK   PIERRE                      |Age: 55    |       |    |   |
96 WEST PLAZA DEL LAGO              |BirthDate  | Hgt   |Race|Sex|Soc. Sec.
ISLAMORADA              FL  33036-0000|11-17-44 |6' 00" | B  | M |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
- - - - - - - - - - - - - - - - - - - -|- - - - - -| - - - - - - - - - - - -
Drivers License #          |  Issued  | Expires |Orig Issued| Search Date
P600-260-44-417-0          | 08-20-99 |11-17-05 | 11-28-77  | 12-13-99
==================================================================================
                        Florida Specific Information

County      : 38-MONROE
Restrictions : [A: Corrective Lenses]      Endorsements: [None]
License Class: [E: Regular Operators License]
License Status: Eligible

Help Numbers  : INSURANCE MATTERS (850)488-7135/OTHER PROBLEMS (850)488-9145
==================================================================================
Accidnt/  Convict Restore  County
Offense    Date    Date    or State City      Court    Entry       Tkt. No.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
         ** ENTRIES BELOW COVER THIS PERSONS ENTIRE RECORD **
         ** THIS PERSON HAS A DIGITAL IMAGE **

11-08-94 12-10-94           DADE       004     COUNTY  CONV-4.0 PTS 064269I
                            UNLAWFUL SPEED                       056/30
                            Disposition: Guilty
                            CON2 575

11-08-94 12-10-94           DADE       005     COUNTY  CONV-0.0 PTS 064270I
                            OP MV OBSCURE/DEFACE/NO TAG/REG CER
                            Disposition: Guilty
                            CON2 472

         * End of Record - - *
==================================================================================
```

EXHIBIT

F

## OFFENSE INCIDENT REPORT

**Agency (ORI Number):** 0.1.3.0.1.0.0  **Agency Name:** MIAMI BEACH POLICE

**Report Number:** 7.7 / 9.8.7.6

Incident Types:
- 1 Felony
- 2 Traffic

**Offense #1** Type 1  Burglary - unocc. Vessel

Incident Location (Street, Apt. Number): 1640 Daytonia  City: MIAMI BEACH  Zip: 33141

**Victim:** V 01 PIERRE, FRANK  Address: 1640 Daytonia  City: MIA BCH  State: FL  Zip: 33141  Phone: 305 866 9748

Other Contact Info: Victim of Burglary - Boat

Victim Type: 6  Race: H  Date of Birth or Age: 1.1.7.4.4

Charging (Nickname): Black Clothing  W M

V 01 reports on the listed date and time an unknown male dressed in
black clothing burglarized the listed boat/vessel. V 01 reports seeing the unknown
male S-01 in a small boat approx. 12-14 feet in length tied up to his dock.
V 01 turned on the lights and went outside. S 01 fled in the boat east bound.
The plexi-glass lock assembly to the cabin was broken and the listed items
removed. Numerous papers and equipment instruction books were found
in the water. V 01 retrieved from S-01 also removed (a) piece fishing
pole. I rod. / vpr. fpr.

A. Juan  O.J.  ABS  05/24/99

EXHIBIT G

**PROPERTY REPORT**

1. Original
2. Supplemental

| | | |
|---|---|---|
| Agency ORI Number: 1 3 0 1 0 0 | Agency Name: MIAMI BEACH POLICE | Agency Report Number: 9 7 L 8 8 2 6 |

Original Date Reported: 0 5 1 4 9 5   Burglary / Theft

Type Theft, Person Code, Property Type rows (form grid):

Person Code V | Item # 01 | Status 1 | Damage 0 | Property Type 2 | Quantity 01 | Name: Plexiglass Cabin Lock | Brand | Model Name/Number
Serial Number: N/A | Owner Applied Number: N/A | Description: Lock with a cabin lock
Value: UNK | Value Recovered | Date Recovered | POC/NCIC
2, 0, 0, 0 | 0, 0

Person Code V | Item # 05 | Status 1 | Damage 0 | Property Type 2 | Quantity 2 | Name: Fishing Rod/Reel | Brand: Penn | Model: Miami
Serial Number: N/A | Owner Applied Number: N/A | Description: Miami Rod/Reel Deep-Sea
Value | Value Recovered | Date Recovered | POC/NCIC
2, 0, 0, 0 | 0, 0

Person Code V | Item # 06 | Status 1 | Damage 0 | Property Type 7 | Quantity 01 | Name: Rod/Reel | Brand: Penn | Model: n/a
Serial Number: N/A | Owner Applied Number: | Description: Ceramic Fish Rod
Value | Value Recovered | Date Recovered | POC/NCIC
2, 0, 0, 0 | 0, 0

Person Code V | Item # 07 | Status 1 | Damage 8 | Property Type 2 | Quantity 01 | Name: Rod/Reel | Brand: Penn | Model
Serial Number: N/A | Owner Applied Number: N/A | Description: Rod
Value | Value Recovered | Date Recovered | POC/NCIC
5, 0, 0 | 0, 0

Officer: [signature]   Sgt. V Etmox Oson
071   A88   05/24/99

## VEHICLE/PROPERTY REPORT

| | 1 Original 2 Supplement |
|---|---|

**MIAMI BEACH POLICE**

Agency ORI Number: 1 3 0 7 0 0

Agency Report Number: 99 18876

Original Date Reported: 05 24 99   Case/Reference: Burglary / Piracy

---

Person Code / Veh #: V 01 01   Runs: 9   Damage: 3   Type: 3   Year: 89   Make: MAINSHIP   Style: M/B

Tag/Reg/Dine #: FL

Decal Number: A45206.7-98

VIN/Hull/HIN: 6 6 0 0 4 5 9 8 2 7

Color (Top/Bottom): WHT / WHT

Vessel Name: _____ Length: 39'1"   Hull Material: FIBERGLASS   Propulsion: INBOARD

---

| Type/Theft | | | | | | 10 1 |
|---|---|---|---|---|---|---|

---

Person Code / Item #: V 01 01   Status: 1   Damage: 0   Property Type: 5   Name: TACKLE 66X   Brand: N/A

Serial Number: N/A   Description: MISC TACKLE

Value: UNK

Person Code / Item #: V 01 02   Status: 1   Damage: 0   Property Type: R   Quantity: 01   Name: STEREO (JENSEN)

Serial Number: D96064290 90

Value: UNK

Person Code / Item #: V 01 03   Status: 1   Damage: 0   Property Type: 2   Quantity: 01   Name: GPS   Brand: MAGELLAN   Model: UNK

Serial Number: N/A   Description: NAV

Value: UNK

---

Original Reported By: A. Tirso

Officer Performing: J. Olmo 0500

ID Number: 571   User: B25   Date: 05/24/98

## NARRATIVE CONTINUATION

| | | | 1. Officer | | 1. Original | |
|---|---|---|---|---|---|---|
| | | | 2. Arrest | / | 2. Supplement | / |

Agency ORI Number: 3 0 7 0 0    MIAMI BEACH POLICE

Agency Report Number: 9 7 1 2 2 7 6

Incident Date Reported: 0 5 2 4 9 9    Case: Burglary / Minor

ROD AND REEL COMBOS FROM THE PATIO AT THE REAR OF THE HOUSE. THE
RODS WERE ON A RACK WITH MANY OTHERS.

CRIME SCENE 11 RESPONDED AND PROCESSED THE SCENE

V-01 WAS ADVISED TO INVENTORY HIS BELONGINGS AND RE-CONTACT IF
ANY FURTHER ITEMS WERE MISSING.

Report Completed: Iorn    Invn    Type: Lenn
Officer(s) Reporting: R. ADK

Principal Reporting: Sgt. J. Elmore 0300 REC

ID Number: 021    Unit: REC    By    Date: 05/24/99

22

**This First Preferred Mortgage**, on the vessel(s) - THE FOUR OF US

Official No. 959827

dated August 19, 19 94

Amount of Mortgage $ 138,075.01

Maturity Date _____ 19 ___

and made by __YOLA PIERRE - 100%,1640 Daytonia Rd.,Miami Beach,Fl.33141__

(hereinafter called "Owner") to STERLING BANK & TRUST, F.S.B. -100%

P.O.Box 1527,Royal Oak,Mi. 48067 . (hereinafter called "Mortgagee"),

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by promissory note dated August 19, , 19 94, in the principal amount of $ 138,075.01 , payable to the order of Mortgagee as follows:

THE PRINCIPAL AMOUNT NOTED ABOVE,PLUS INTEREST, DUE AND PAYABLE IN ACCORDANCE WITH THE TERMS & CONDITIONS SET FORTH IN THAT PROMISSORY NOTE REFERRED TO ABOVE.

and has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof,
NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents

mortgages and conveys and assigns, the whole of the motoryacht
(Type of Vessel) named below and further described in her (their) last marine document(s) issued and identified as follows:

| Name | Home Port | Official Number | Gross Tons | Net Tons |
|---|---|---|---|---|
| THE FOUR OF US | MIAMI,FLA. | 959827 | 23 | 19 |

| Enrollment Number | Place Issued | Date Issued |
|---|---|---|
| COD | MIAMI,FLA. | |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference:

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever:

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note has been fixed, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE 1. - Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect, and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of _____ and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any part or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs tow..ge, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall be its term be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction whereln operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

EXHIBIT 1

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

ARTICLE II. — *Default*

1. In any one or more of the following events, herein termed "events of default," viz.:

(a) Default in the punctual payment of the principal of the note secured hereby or any instalment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or [

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured instalments of principal and then of any or all unmatured instalments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

2

## ARTICLE III. — *Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

## ARTICLE IV. — *Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their."

FUTURE ADVANCES   This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

BY: YOLA PIERRE

## ACKNOWLEDGMENT
### (Indiv, or joint ownership)

State of _Florida_                          County of _Broward_

BE IT KNOWN, That on this _19_ day of _August_ 19 _94_ Personally appeared
YOLA PIERRE , to me known and known to me to be the
person/s who signed his/her/their name (s) to the within instrument, and acknowledged the same to be his/her/their free act and deed.

IN WITNESS WHEREOF, I hereby set my hand and seal this _19_ day of _August_
A.D., 19 _94_

SEAL
My commission expires:

_____ Notary Public

## ACKNOWLEDGMENT (Corporate ownership)

STATE OF_____          COUNTY OF_____

THE FOREGOING INSTRUMENT HAS ACKNOWLEDGED BEFORE ME THIS DATE_____ BY :
_____(date)_____
(name)                          (capacity-title)          ON BEHALF OF THE CORPORATION,
name of corporation as in item 3 above
BY THE ORDER OF ITS BOARD OF DIRECTORS.
NOTARY: affix signature, seal,
late commission expires.          _____
NOTARY PUBLIC

OATH OF CITIZENSHIP OF PROPER OFFICER OF MORTGAGEE IS FILED
SIMULTANEOUSLY WITH PRESENTATION OF THIS MORTGAGE FOR RECORDING.

OF ......_Feb_...........A.D. 19.95.., AT
7:42. O'CLOCK ...P. M., AND RECORDED IN
BOOK NO. _DVDC-75_ INSTRUMENT NO. 516....

**DOCUMENTATION OFFICER**

Port of ___MIAVO___ Date _7-27-85_
I HEREBY CERTIFY THAT THIS IS A TRUE COPY OF THE
ORIGINAL PREFERRED MORTGAGE RECORDED IN THIS OFFICE

**Documentation Officer**

# CIVIL COVER SHEET

**00 - 0388**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV - _____**

**MAGISTRATE JUDGE**
**O'SULLIVAN**

## I (a) PLAINTIFFS

AXA GLOBAL RISKS (UK), LTD.

## DEFENDANTS

FRANK MERBE, JR., Individually

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

Dade 1:00cv388/kmm/Osullivan

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jonathan W. Skipp, Esq.     Tel: 305-670-2525
Horr, Linfors, Skipp & Novak, P.A.
9100 S. Dadeland Blvd, Suite 1001
Miami, Florida 33165

ATTORNEYS (IF KNOWN)

## (d) CIRCLE COUNTY WHERE ACTION AROSE:
**DADE,** MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION
(PLACE AN X ONE BOX ONLY)

☐ 1. U.S. Government   Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government   Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Case Only)
(PLACE AN X ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. §2201 et seq.; this is an admiralty and maritime claim for declaratory judgment relief regarding coverage under a policy of marine insurance.

**IVa.** __2__ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT
(PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A PERSONAL INJURY | A TORTS PERSONAL INJURY | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|---|
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☒ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | A PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | PERSONAL PROPERTY | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 370 Other Fraud | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 371 Truth in Lending B | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 380 Other Personal Property Damage | ☐ 660 Occupational Safety/Health | B SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 385 Property Damage Product Liability | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | | A LABOR | ☐ 862 Black Lung (923 | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (.425(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | A FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General ' | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other ' | | | ☐ 890 Other Statutory Actions ' |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights ' A or B | | | ' A or B |

## VI. ORIGIN
(PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed From State Court
☐ 3 Remanded from Appellate Court
☐ 4 Refiled
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $** _____
☐ Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES   ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE _____   DOCKET NUMBER _____

DATE **1-27-00**

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. **216164**
Date Paid: **1/27/00**

Amount: **150.00**
M/fp: _____